UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| VICTOR MORA,<br><br>                              Plaintiff,<br><br>v.<br><br>TOR ROBINSON, et al.,<br><br>                              Defendants. | Case No.:  22cv1431-RSH(LR)<br><br>**REPORT AND RECOMMENDATION FOR ORDER GRANTING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**<br><br>**[ECF NO. 39]** |

This Report and Recommendation is submitted to United States District Judge Robert S. Huie pursuant to 28 U.S.C. § 636(b) and Civil Local Rule 72.3(f) of the United States District Court for the Southern District of California.  For the reasons discussed below, the Court **RECOMMENDS GRANTING** Defendants' Motion for Summary Judgment.

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

## A.  Procedural History

On September 19, 2022, Plaintiff Victor Mora, proceeding *pro se*, filed a civil rights Complaint pursuant to 42 U.S.C. § 1983 alleging that Defendants Warden L. Montgomery, Dr. Tor Robinson, Dr. Nathan Williams, registered nurse ("R.N.") Bianca Ramirez, R.N. Marsha Robinson, and licensed vocational nurse Lou Ann Evans violated his Eighth Amendment rights by failing to provide adequate medical care.  (See ECF No 1.)  On January 13, 2023, District Judge Robert S. Huie screened Plaintiff's Complaint and found that Plaintiff had stated an Eighth Amendment claim against Defendants Tor Robinson and Nathan Williams for failing to provide adequate medical care.  (ECF No. 7 at 7–9.)  District Judge Huie further found that Plaintiff failed to state an Eighth Amendment claim against Defendants L. Montgomery, Bianca Ramirez, Marsha Robinson, and Lou Ann Evans, and dismissed those Defendants.  (Id. at 9–11.)  District Judge Huie required Plaintiff to either notify the Court of his intention to proceed with the Eighth Amendment claims against Defendants Robinson and Williams only, or to file an Amended Complaint.  (Id. at 12.)  On February 24, 2023, Plaintiff filed a document advising the Court that he wished to proceed with his Eighth Amendment claims against Defendants Tor Robinson and Nathan Williams only.  (ECF No. 8 at 1.)

On August 2, 2024, Defendants physician assistant ("P.A.") Tor Robinson[1] and Dr. Nathan Williams filed a Motion for Summary Judgment, arguing that they are entitled to summary judgment and qualified immunity.  (See ECF No. 39 at 14–23.)  Defendants'

---

[1] The Court notes that Plaintiff alleged in his unverified Complaint that Defendant Tor Robinson was a "Doctor."  (See ECF No. 1 at 1–2, 7.)  Declarations submitted by Defendants in support of their Motion for Summary Judgment state that Tor Robinson was a "physician assistant" at Calipatria in 2020–2021.  (See ECF No. 39-3, Decl. of T. Robinson, P.A. at 1; ECF No. 39-4, Decl. of Sohaib Kureshi, M.D. at 2; see also ECF No. 39-1, Decl. of S. Gray Gilmor at 1.)  During Plaintiff's deposition testimony made under oath, Plaintiff did not dispute that Defendant Tor Robinson was a "physician assistant" at Calipatria during the events at issue in this action.  (See ECF No. 39-1 at 69, 72, 74, 76.)

motion contains a Memorandum of Points and Authorities, (id. at 7–22), a statement of undisputed facts in support of Defendants' Motion for Summary Judgment, (id. at 7–12), supporting exhibits, (ECF No. 39-1 at 3–54), portions of a transcript of Plaintiff's deposition testimony made under oath, (ECF No. 39-1 at 56–77 ("Pl.'s Dep.")), and four supporting declarations, (ECF No. 39-1 at 1–2, Decl. of S. Gray Gilmor ("Gilmor Decl."); ECF No. 39-2 at 1–4, Decl. of N. Williams, M.D. ("Williams Decl."); ECF No. 39-3 at 1–3, Decl. of T. Robinson, P.A. ("Robinson Decl."); ECF No. 39-4 at 1–8, Decl. of Sohaib Kureshi, M.D. ("Kureshi Decl.")).

On August 6, 2024, the Court issued a notice to Plaintiff of the requirements for opposing summary judgment pursuant to Rand v. Rowland, 154 F.3d 952 (9th Cir. 1998) (en banc) and Klingele v. Eikenberry, 849 F.2d 409 (9th Cir. 1988), and set a briefing schedule. (ECF No. 42.) Plaintiff did not file an opposition to Defendants' Motion for Summary Judgment. (See Docket.)

**B. Plaintiff's Allegations**

Plaintiff's surviving claims in his Complaint are Eighth Amendment claims against Defendants P.A. Robinson and Dr. Williams for failing to provide adequate medical care at Calipatria State Prison ("Calipatria"). (See ECF No. 1; see also ECF Nos. 7, 8.) Specifically, Plaintiff alleges that on December 20, 2020, he started experiencing back pain and numbness to his left leg, and in January 2021, began seeking medical attention, but was given Ibuprofen for the pain. (ECF No. 1 at 4.) When Plaintiff's pain intensified on January 11, 2021, he was given a shot of Toradol. (Id.)

On January 12, 2021, Defendant Dr. Williams examined Plaintiff for his back problems. (Id. at 5.) Dr. Williams "denied anything was wrong with Plaintiff," instructed him to stretch out, and "refused to provide additional medical treatment," even though Plaintiff told Dr. Williams that he was in pain and was suffering. (Id.)

On February 5, 2021, Plaintiff was experiencing severe pain and leg numbness, was unable to move or walk, and requested emergency medical attention. (Id.) Defendant Dr. Williams examined Plaintiff, prescribed another Toradol shot, ordered a

magnetic resonance imaging ("MRI"), and transferred Plaintiff to an Outpatient Housing Unit ("OHU").  (Id. at 6–7.)  Dr. Williams told Plaintiff that the MRI "would take a while because his situation was not considered urgent."  (Id. at 7.)  On February 8, 2021, Plaintiff was discharged and returned back to his cell.  (Id.)

On February 10, and February 16, 2021, Plaintiff was experiencing strong back pain, numbness in his legs, and was unable to move.  (Id.)  Defendant P.A. Robinson examined Plaintiff, and "refuse[d] to call Plaintiff['s] medical problem an emergency and did not provide additional treatment."  (Id. at 7–8.)

On February 18, 2021, Plaintiff had a follow-up appointment with Defendant Dr. Williams who examined Plaintiff for his "back problems."  (Id. at 8.)  Plaintiff advised Dr. Williams that "his situation was serious[,] he needed help right away[,] he needed to see a specialist or go to the Emergency Room because his pain was bad and it was interfering with his daily activities."  (Id.)  However, Dr. Williams refused to call Plaintiff's situation an emergency and did not provide any further medical treatment. (Id.)

On February 19, 2021, Plaintiff requested medical attention because he was in pain, could not move and walk, and his legs were numb.  (Id.)  Medical staff classified Plaintiff's situation an "emergency" and sent Plaintiff to the ER, where he had an MRI of his back.  (Id.)  Plaintiff's MRI revealed that he had discitis/osteomyelitis and an epidural abscess of the L3/L4, he was hospitalized for three days, and was "provided treatment." (Id. at 8–9.)  Plaintiff was advised that the antibiotic treatment might not work, and that in that case he might require surgery.  (Id. at 9.)  On February 22, 2021, Plaintiff was discharged back to the prison.  (Id.)

On March 15, 2021, Plaintiff advised medical staff at Calipatria that he had abdominal pain and fever.  (Id.)  He was transferred to the ER where an MRI revealed discitis of the L3/L4 level and epidural abscess.  (Id.)  Plaintiff was informed that his infection had progressed and he required surgery, and the surgery was performed on

March 23, 2021.  (Id.)  Plaintiff alleges that "medical attention was provided too late," thereby necessitating a surgery on his back.  (Id. at 10.)

## II.  LEGAL STANDARDS

### A.    Standards Applicable to *Pro Se* Litigants

When a plaintiff appears *pro se*, a court must liberally construe the pleadings.  See Erickson v. Pardus, 551 U.S. 89, 94 (2007); Soto v. Sweetman, 882 F.3d 865, 872 (9th Cir. 2018) (citation omitted) (providing that "courts should construe liberally motion papers and pleadings filed by *pro se* inmates and should avoid applying summary judgment rules strictly").  The rule of liberal construction is "particularly important" in civil rights cases.  See Hebbe v. Pliler, 627 F.3d 338, 342 (9th Cir. 2010); Ferdik v. Bonzelet, 963 F.2d 1258, 1261 (9th Cir. 1992).  Although this rule "exempts *pro se* inmates from *strict* compliance with the summary judgment rules," the rule "does not exempt them from *all* compliance."  Soto, 882 F.3d at 872 (9th Cir. 2018).

### B.    Summary Judgment

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A fact is "material" if it could affect the outcome of the suit under the governing substantive law.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  A dispute regarding a material fact is "genuine" if there is sufficient evidence for a reasonable fact finder to decide in favor of the nonmoving party.  Id.

The moving party has the initial burden of identifying the pleadings and evidence it "believes demonstrate the absence of a genuine issue of material fact."  Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  "Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case."  In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Celotex Corp., 477 U.S. at 325).  The burden then shifts to the opposing party to provide admissible evidence beyond the pleadings to show that summary judgment is not appropriate.  Celotex Corp., 477 U.S. at 322–24.  The opposing

22cv1431-RSH(LR)

party "must do more than simply show that there is some metaphysical doubt as to the material facts." Scott v. Harris, 550 U.S. 372, 380 (2007) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586–87 (1986)).  The opposing party "must come forward with specific facts showing that there is a *genuine issue for trial*." Matsushita Elec. Indus. Co., 475 U.S. at 587 (internal citation omitted).  If the opposing party fails to make a sufficient showing of an essential element of its case, the moving party is entitled to judgment as a matter of law.  See Celotex Corp., 477 U.S. at 322–23.

"In ruling on a motion for summary judgment, '[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor.'"  Tolan v. Cotton, 572 U.S. 650, 651 (2014) (quoting Anderson, 477 U.S. at 255).  Courts may not weigh evidence or make credibility determinations.  Manley v. Rowley, 847 F.3d 705, 711 (9th Cir. 2017); Soremekun v. Thrifty Payless, Inc., 509 F.3d 978, 984 (9th Cir. 2007).  If direct evidence produced by the moving party conflicts with direct evidence produced by the nonmoving party, the court is required to assume the truth of the evidence set forth by the nonmoving party with respect to that fact.  Leslie v. Grupo ICA, 198 F.3d 1152, 1158 (9th Cir. 1999) (citation omitted).

## C.    42 U.S.C. § 1983

42 U.S.C. § 1983 states the following:

> [e]very person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress[.]

Id.

"To prevail under 42 U.S.C. § 1983, a plaintiff must prove that he was 'deprived of a right secured by the Constitution or laws of the United States, and that the alleged deprivation was committed under color of state law.'"  Marsh v. Cnty. of San Diego, 680

F.3d 1148, 1152 (9th Cir. 2012) (quoting <u>Am. Mfrs. Mut. Ins. Co. v. Sullivan</u>, 526 U.S. 40, 49–50 (1999)).  "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation."  <u>Leer v. Murphy</u>, 844 F.2d 628, 633 (9th Cir. 1988).

## D.    <u>Evidence the Court May Consider on Summary Judgment</u>

When evaluating a motion for summary judgment, a court must consider the factual contents of the verified pleading.  <u>See</u> <u>Jones v. Blanas</u>, 393 F.3d 918, 923 (9th Cir. 2004) (considering plaintiff's evidence where plaintiff "attested under penalty of perjury that the contents of the motions or pleadings are true and correct").  At the summary judgment stage, the court may also consider inadmissible evidence if it may be presented in an admissible form at trial.  <u>See</u> <u>Celotex Corp.</u>, 477 U.S. at 324 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").  As the Ninth Circuit repeatedly stated, at the summary judgment stage, the court focuses on the admissibility of the evidence's contents, not its form:

> "[a]t the summary judgment stage, we do not focus on the admissibility of the evidence's form.  We instead focus on the admissibility of its contents." <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036 (9th Cir. 2003); <u>see</u> Fed. R. Civ. P. 56(c)(2).  If the contents of a document can be presented in a form that would be admissible at trial—for example, through live testimony by the author of the document—the mere fact that the document itself might be excludable hearsay provides no basis for refusing to consider it on summary judgment. <u>Fraser</u>, 342 F.3d at 1036–37 (holding that the plaintiff's diary could be considered on summary judgment because she could testify consistent with its contents at trial).

<u>Sandoval v. Cnty. of San Diego</u>, 985 F.3d 657, 666 (9th Cir. 2021) (citing <u>Fraser v. Goodale</u>, 342 F.3d 1032, 1036–37 (9th Cir. 2003)).

In <u>Fraser</u>, the Ninth Circuit reversed a grant of summary judgment, holding that the district court should have considered unsworn, arguably inadmissible statements written

by plaintiff in a diary.  Id., 342 F.3d at 1036–37.  The Ninth Circuit stated that the contents of plaintiff's diary "were mere recitations of events within [the plaintiff's] personal knowledge and, depending on the circumstances, could be admitted into evidence at trial in a variety of ways," including through plaintiff's testimony.  Id. at 1037.  Because the contents of the diary could be presented in an admissible form at trial, the court concluded that the diary's contents should have been considered as part of the summary judgment motion.  Id.

In this case, Plaintiff has not submitted an opposition to Defendants' Motion for Summary Judgment and his Complaint was not signed under penalty of perjury.  (See ECF No. 1 at 12.)  Nevertheless, because Plaintiff's unverified Complaint contains factual statements regarding his Eighth Amendment violation claims about which Plaintiff has personal knowledge, and because Plaintiff could testify under oath at trial regarding his personal knowledge, the Court will consider those statements.  See Fraser, 342 F.3d at 1036–37; see also Carson v. Martinez, Case No.: 16cv1736-JLS (BLM), 2019 WL 1572969, at *3 (S.D. Cal. Apr. 11, 2019) (considering statements in pro se prisoner's operative complaint in a 42 U.S.C. § 1983 action when ruling on a motion for summary judgment; reasoning that the unverified complaint contained factual statements regarding the prisoner's claims about which he had personal knowledge, and that the prisoner could testify under oath at trial regarding his personal knowledge), report and recommendation adopted, 2019 WL 4164952, at *1 (S.D. Cal. Sept. 3, 2019); Nava v. Velardi, Case No.: 15cv1156-AJB(BLM), 2018 WL 3773848, at *7 (S.D. Cal. Aug. 9, 2018) (same); see also Roman v. Adams, Civil No. 07cv1343–JLS (POR), 2010 WL 3119526, at *5 (S.D. Cal. June 25, 2010) (considering the documents attached to pro se prisoner's operative complaint in a 42 U.S.C. § 1983 action when ruling on a motion for summary judgment), report and recommendation adopted, 2010 WL 3184310, at *1 (S.D. Cal. Aug. 5, 2010).

/ / /

/ / /

/ / /

# III.  DISCUSSION

## A.  Eighth Amendment Deliberate Indifference Claim

Defendants argue that they are entitled to summary judgment.  (ECF No. 39 at 14–21.)  They assert that P.A. Robinson is entitled to summary judgment because his treatment of Plaintiff on two occasions during the relevant period in this action on February 16, and February 23, 2021, was medically acceptable under the circumstances.  (Id. at 15–17.)  Defendants further contend that Dr. Williams is entitled to summary judgment because his response and treatment of Plaintiff on January 12, February 5, and February 18, 2021, was medically acceptable under the circumstances.  (Id. at 17–21.)  Defendants maintain that the undisputed facts show that they were not deliberately indifferent to Plaintiff's serious medical needs, and, therefore, they did not violate Plaintiff's Eighth Amendment rights.  (See id. at 14–21.)

Despite being given an opportunity to do so, Plaintiff has not opposed Defendants' Motion for Summary Judgment.  (See Docket; see also ECF No. 42 at 2.)  "Even when a motion for summary judgment is unopposed, . . . the moving party retains its burden to demonstrate the absence of any issue of material fact."  Lopez-Gomez v. Sessions, 693 F. App'x 729, 731 (9th Cir. 2017) (citing Cristobal v. Siegel, 26 F.3d 1488, 1494–95 (9th Cir. 1994)).  "Trial courts resolving unopposed summary judgment motions have an obligation to evaluate independently the sufficiency of the moving papers."  Lopez-Gomez, 693 F. App'x at 731 (citing Cristobal, 26 F.3d at 1496); see also Swan v. Smith, 116 F.3d 486 (9th Cir. 1997) ("The moving party must demonstrate the absence of genuine issues of material fact, regardless of whether the party against whom the motion for summary judgment is directed has filed any opposition.").  Accordingly, the Court turns to the sufficiency of Defendants' moving papers.

### 1.  Legal standard

Prison officials violate a prisoner's Eighth Amendment right to be free from cruel and unusual punishment if they are deliberately indifferent to the prisoner's serious medical needs.  See Estelle v. Gamble, 429 U.S. 97, 106 (1976); Colwell v. Bannister,

763 F.3d 1060, 1066 (9th Cir. 2014).  To prevail on a deliberate indifference to serious medical needs claim, the prisoner must satisfy both an objective and a subjective requirement.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994); Colwell, 763 F.3d at 1066.

To satisfy the objective requirement, the prisoner "must show a serious medical need by demonstrating that failure to treat [the] prisoner's condition could result in further significant injury or the unnecessary and wanton infliction of pain."  Wilhelm v. Rotman, 680 F.3d 1113, 1122 (9th Cir. 2012) (quoting Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006)); see also Farmer, 511 U.S. at 834 (providing that "the deprivation alleged must be, objectively, 'sufficiently serious.'").  "[S]erious medical needs include '[t]he existence of an injury that a reasonable doctor or patient would find important and worthy of comment or treatment; the presence of a medical condition that significantly affects an individual's daily activities; or the existence of chronic and substantial pain.'"  Lopez v. Smith, 203 F.3d 1122, 1131 (9th Cir. 2000) (citation omitted).

To satisfy the subjective requirement, the prisoner is required to show that defendants' response to the prisoner's serious medical need was "deliberately indifferent."  Wilhelm, 680 F.3d at 1122 (quoting Jett, 439 F.3d at 1096); see also Farmer, 511 U.S. at 834 (quoting Wilson v. Seiter, 501 U.S. 294, 303–03 (1991)) ("To violate the Cruel and Unusual Punishments Clause, a prison official must have a 'sufficiently culpable state of mind'" and act with "'deliberate indifference' to inmate health or safety[.]").  "[T]he official must be both aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference."  Farmer, 511 U.S. at 837.

"Deliberate indifference 'may appear when prison officials deny, delay or intentionally interfere with medical treatment, or it may be shown by the way in which prison physicians provide medical care.'"  Colwell, 763 F.3d at 1066 (quoting Hutchinson v. United States, 838 F.2d 390, 394 (9th Cir. 1988)).  The indifference to medical needs must be substantial; inadequate treatment due to "mere malpractice, or

even gross negligence, does not suffice" for a constitutional violation.  Bennett v. Dhaliwal, 721 F. App'x 577, 579 (9th Cir. 2017) (citation omitted); see also Estelle, 429 U.S. at 106 ("Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.").  A mere delay in medical treatment, without a showing of resulting harm, is not sufficient to support a deliberate indifference claim. See Edwards v. High Desert State Prison, 615 F. App'x 457 (9th Cir. 2015); Shapley v. Nev. Bd. of State Prison Comm'rs, 766 F.2d 404, 407 (9th Cir. 1985) (providing that a "mere delay of surgery, without more, is insufficient to state a claim of deliberate medical indifference").  Further, a difference of opinion between a prisoner-patient and prison medical personnel regarding medical diagnosis and treatment does not establish a claim of deliberate indifference.  See Colwell, 763 F.3d at 1068 ("A difference of opinion between a physician and the prisoner—or between medical professionals—concerning what medical care is appropriate does not amount to deliberate indifference."); Sanchez v. Vild, 891 F.2d 240, 242 (9th Cir. 1989).  "Rather, to prevail on a claim involving choices between alternative courses of treatment, a prisoner must show that the chosen course of treatment 'was medically unacceptable under the circumstances,' and was chosen 'in conscious disregard of an excessive risk to [the prisoner's] health.'"  Toguchi v. Chung, 391 F.3d 1051, 1058 (9th Cir. 2004) (citation omitted).

In this case, Defendants P.A. Robinson and Dr. Williams are the parties moving for summary judgment, and thus they "bear[ ] the initial responsibility" of identifying the portions of the record that they believe "demonstrate the absence of a genuine issue of material fact."  See Celotex Corp., 477 U.S. at 323.  Because Plaintiff has the burden of proof at trial, Defendants "need only prove that there is an absence of evidence to support [Plaintiff's] case."  See In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325).

/ / /

/ / /

/ / /

## 2. Defendants' Evidence

### a. Plaintiff's treatment and surgery

Plaintiff was an inmate at Calipatria during the events at issue in this action, Defendant Robinson was a licensed physician assistant and Dr. Williams was a medical doctor at Calipatria. (Robinson Decl. at 1; Williams Decl. at 1.) On January 10, 2021, R.N. Brooks examined Plaintiff for severe back pain and numbness. (Gilmor Decl. at 2; id., Ex. A at 5–7.) Plaintiff reported that he started experiencing back pain after a work-related injury a week before. (Id.) Dr. Hjerpe contacted R.N. Brooks by telephone and approved a Tylenol (acetaminophen) prescription, and noted a follow-up appointment the following day. (Id.)

On January 11, 2021, Dr. Hjerpe examined Plaintiff and documented Plaintiff's lower back and leg pain, numbness, and tingling. (Gilmor Decl. at 2; id., Ex. A at 4–5.) Dr. Hjerpe further noted that Plaintiff was able to ambulate and had a follow-up appointment with his primary care physician the next day. (Id.) Dr. Hjerpe prescribed a Toradol[2] 30 mg shot and advised Plaintiff to continue taking Prednisone.[3] (Id.)

On January 12, 2021, Defendant Dr. Williams examined Plaintiff. (Gilmor Decl. at 2; id., Ex. A at 8–9; Williams Decl. at 2.) Plaintiff's "Chief Complaint" was lower back pain with numbness to his right foot, but he also reported that the Toradol shot that he had received the day before decreased his pain from 10/10 to 5/10. (Gilmor Decl. at 2; id., Ex. A at 8; Williams Decl. at 2.) Dr. Williams' physical examination of Plaintiff revealed "[m]ild tenderness of right side lower back" and limited range of motion due to stiffness. (Gilmor Decl. at 2; id., Ex. A at 9; Williams Decl. at 2.) Dr. Williams noted that Plaintiff's pain was "[g]radually improving," and advised Plaintiff to continue taking

---

[2] Toradol is a brand name for ketorolac, an anti-inflammatory medication used to treat moderate to severe pain. (Williams Decl. at 3.)

[3] Prednisone is a corticosteroid medication that reduces inflammation and treats pain. (Id.)

pain medications consisting of Tylenol 650 mg, Motrin 400 mg, and Prednisone 40 mg. (Gilmor Decl. at 2; id., Ex. A at 8–9; Williams Decl. at 2.)  Dr. Williams also noted that "all questions were answered to [Plaintiff's] satisfaction," and that Plaintiff "indicated understanding and agreement with treatment plan."  (Gilmor Decl. at 2; id., Ex. A at 9.)

On February 5, 2021, Plaintiff alerted staff that he needed emergency medical attention, and was transferred to Calipatria's triage treatment area ("TTA") for further evaluation.  (Id. at 10–11.)  At the TTA, Defendant Dr. Williams examined Plaintiff for the second time and noted that although Plaintiff had been taking his prescribed medications as directed, his pain was not improving.  (Id. at 10–12; Williams Decl. at 2.)  Dr. Williams performed a physical examination and noted that Plaintiff's back was "[v]ery tender" near the spine.  (Id.)  Dr. Williams gave Plaintiff a shot of Toradol 60 mg for pain and ordered an MRI of Plaintiff's "lumbar anatomy."  (Gilmor Decl. at 2; id., Ex. A at 11; Williams Decl. at 2.)  Due to Plaintiff's worsening condition, Dr. Williams elevated Plaintiff to a higher level of care and placed him in Calipatria's OHU, which provides a higher level of care and closer monitoring.  (Williams Decl. at 2.)

On February 16, 2021, Defendant P.A. Robinson examined Plaintiff for back pain. (See Gilmor Decl. at 2; id., Ex. A at 13–16; Robinson Decl. at 2.)  He noted that Plaintiff was in "mild distress" with 7/10 pain level, and his physical examination of Plaintiff revealed low back pain with palpation, and "decreased range of motion with flexion and extension."  (Gilmor Decl. at 2; id., Ex. A at 14–15; Robinson Decl. at 2.)  Under "Assessment/Plan," P.A. Robinson stated that Plaintiff's "MRI ha[d] already been ordered," and that he treated Plaintiff's pain by administering Toradol 60 mg shot and prescribing Prednisone 5 mg.  (Gilmor Decl. at 2; id., Ex. A at 15; Robinson Decl. at 2.) P.A. Robinson further noted that he advised Plaintiff to "hold off on any strenuous activity," use temporary cane for mobility, and "consider TPI [trigger point injection[4]] in

---

[4]  A trigger point injection treats muscle pain by injecting a small amount of anesthetic.  (Id.)

the future if symptoms continue or become progressively worse." (Gilmor Decl. at 2; id., Ex. A at 15.)

On February 18, 2021, Dr. Williams examined Plaintiff for the third and final time during the timeframe at issue in this action, and noted that Plaintiff had a limited range of motion due to pain and stiffness and "[t]enderness diffusely low back mostly on the right." (Gilmor Decl. at 2; id., Ex. A at 17–18; Williams Decl. at 2.) Dr. Williams noted Plaintiff's pain in the lower back area and stated that Plaintiff's MRI was "pending." (Gilmor Decl. at 2; id., Ex. A at 17; Williams Decl. at 2–3.) Dr. Williams ordered a mobility impaired vest, and prescribed Salsalate[5] 1,000 mg and Capsaicin cream.[6] (Gilmor Decl. at 2; id., Ex. A at 17; Williams Decl. at 3.)

On February 19, 2021, Plaintiff was transported to Pioneers Memorial Health District ("Pioneers") for a higher level of treatment. (Gilmor Decl. at 2; id., Ex. A at 23–24.) On the same day, Plaintiff had an MRI, which revealed discitis–osteomyelitis of L3–L4 level, as well as surrounding epidural abscess. (Id. at 28–29.) Plaintiff was prescribed two antibiotic medications, Vancomycin and Ceftriaxone, to treat his infection. (Id. at 35–36.)

On February 20, 2021, Dr. Al-Jasim, an infectious disease specialist at Pioneers, examined Plaintiff and continued Plaintiff's antibiotic medications. (Id. at 40–41.) The next day, on February 21, 2021, Dr. Manix examined Plaintiff at Pioneers. (Id. at 42–43.) He noted that Plaintiff's MRI of the lumbar spine showed osteomyelitis of L3 and L4, and discitis and small epidural abscess, and placed Plaintiff on a six-week antibiotic regimen to treat his spinal infection. (Id. at 42–44.) Dr. Manix determined that Plaintiff did not require a surgery at the time because he did not have a neurologic deficit. (Id. (stating that Plaintiff was "[n]onsurgical at this point as he does not have neurologic

---

[5] Salsalate is a non-steroidal anti-inflammatory medication used to treat pain. (Id.)

[6] Capsaicin cream is a pain relieving medication applied topically. (Id.)

deficit, but should he progress to have neurologic deficit[,] or abscess[,] or infection does not get better with antibiotic treatment as prescribed . . . then at that point he is a surgical candidate.").)

On February 23, 2021, after Plaintiff returned to Calipatria, Defendant P.A. Robinson examined Plaintiff, noted the results of Plaintiff's February 19, 2021 MRI, and that Plaintiff was taking two antibiotic medications to treat his interspinal abscess—Vancomycin and Ceftriaxone. (Gilmor Decl. at 2; id., Ex. A at 19–22; Robinson Decl. at 2.) P.A. Robinson's physical examination of Plaintiff revealed lower lumbar pain with mild palpation and decreased range of motion. (Id.) P.A. Robinson continued Plaintiff's antibiotic prescriptions, noted that Plaintiff was to have a repeat MRI after the completion of his antibiotic regiment, and prescribed Tylenol with Codeine ("Tylenol No. 3") to treat Plaintiff's pain. (Gilmor Decl. at 2; id., Ex. A at 21; Robinson Decl. at 2.)

On March 15, 2021, Dr. Gyimah examined Plaintiff at Calipatria's OHU. (Gilmor Decl. at 2; id., Ex. A at 44–46.) He noted that the antibiotics were not improving Plaintiff's symptoms and transferred Plaintiff to the ER at Pioneers for further evaluation. (Id.) On March 17, 2021, Plaintiff received a second MRI, which confirmed his previous diagnosis of discitis–osteomyelitis of L3–L4. (Id. at 47.)

On March 18, 2021, Plaintiff had a surgical consultation at Pioneers with neurosurgeon Dr. Calvin, Jr. (Id. at 47–50.) Dr. Calvin reviewed Plaintiff's MRIs, determined that his infection was getting worse, and recommended surgery to clean and drain the infection. (Id. at 49–50.) On March 23, 2021, Dr. Calvin performed a surgery on Plaintiff's back. (Id. at 51–53.)

### b. Plaintiff's testimony

Plaintiff was deposed in this matter on January 3, 2024. (See Pl.'s Dep. at 56–77.) He testified that he started experiencing strong back pain in December 2020, after he "pulled something" by lifting an object, and he decided to wait eight-to-ten days before seeking medical attention believing that his pain would "go away." (Id. at 60–61.) However, Plaintiff's pain worsened overtime, he requested medical treatment, and

received pain medications, including Ibuprofen, Tylenol, and Toradol shot.  (See id. at 61–76.)

On January 12, 2021, Plaintiff saw Dr. Williams, who told Plaintiff to stretch.  (Id. at 63.)  Plaintiff advised Dr. Williams that he could not stretch because he was not able to move, and his prescribed pain medications were not relieving his pain.  (Id.)  Plaintiff insisted on getting an immediate MRI, but Dr. Williams "was not hearing [Plaintiff] out" and told him to wait because Plaintiff had already been scheduled to receive an MRI.  (Id. at 63–66.)

Plaintiff further testified that he was taking Prednisone, which was "the only thing that [wa]s working for [him]" and made him "feel like [he was] not in pain."  (Id. at 64.)  He explained that he "couldn't move, but [he] could feel like [he was] not in pain."  (Id.)  Plaintiff also testified that he spent three days at OHU at Calipatria from February 5, 2021, until February 8, 2021.  (Id. at 67.)  At that time, he was also prescribed Naproxen.  (Id.)

On February 16, 2021, P.A. Robinson examined Plaintiff, advised Plaintiff to take his prescribed medications, including Ibuprofen, Tylenol, and Naproxen, and stated that Plaintiff was scheduled for an "MRI or X-ray."  (Id. at 68.)  Despite Plaintiff's reports that he was getting worse and needed to go to the hospital ER, P.A. Robinson told Plaintiff that he needed to wait, and if he did not improve, P.A. Robinson would administer shots in Plaintiff's back.  (Id.)  Plaintiff further testified that when he was subsequently offered the shot, he "refused it."  (Id.)

On February 18, 2021, Dr. Williams examined Plaintiff's back and told him that his pain might have been caused by a sciatic nerve.  (Id. at 69.)  Plaintiff reported that he was getting worse and started experiencing numbness in his leg.  (Id.)  Dr. Williams advised Plaintiff to stretch, stated that his MRI had already been ordered, and refused to send Plaintiff to the ER.  (Id. at 69–70.)  Dr. Williams prescribed Capsaicin topical cream to relieve Plaintiff's pain, but the cream did not provide relief.  (Id. at 70.)  Dr. Williams also prescribed a cane and Salsalate.  (Id. at 70–71.)

During Plaintiff's next appointment with P.A. Robinson, he prescribed Tylenol 3. (Id. at 72.)  He also advised Plaintiff that his MRI had already been ordered.  (Id.)

Additionally, Plaintiff testified that his surgery provided some relief and he was "better," but he was still experiencing pain.  (Id. at 73.)  He stated that his pain was "manageable some days," and that "[s]ome days [we]re better than others."  (Id.)

Plaintiff also clarified during his deposition that his claims against Defendants Dr. Williams and P.A. Robinson were for the timeframe before his surgery in March 2021. (See id. at 74.)  He explained that Dr. Williams "did not listen to [Plaintiff] at all," was "not trying to hear what [Plaintiff] had to say," and was "giving [Plaintiff] the runaround."  (Id. at 75.)  Plaintiff stated that P.A. Robinson "tried more than [Dr.] Williams" because he gave Plaintiff a cortisone shot and other medications.  (Id. at 75–76.)

### c.  Expert testimony

Dr. Kureshi, a board-certified neurological surgeon and Defendants' retained medical expert, reviewed Plaintiff's medical records, as well as all radiographic studies concerning Plaintiff's discitis with osteomyelitis dating back to December 2020. (Kureshi Decl. at 1–2.)  Based on his review of the records, Dr. Kureshi concluded that "Dr. Williams and P.A. Robinson's treatments of Plaintiff were at or exceeded the standard of care."  (Id. at 3.)  Dr. Kureshi specifically opined that at each of the examinations at issue in this case, "Dr. Williams and P.A. Robinson appropriately treated Plaintiff's pain by administering and prescribing various pain medications including but not limited to Tylenol, Tylenol with codeine, Toradol shots, [S]alsalate, and [P]rednisone."  (Id.)  Dr. Kureshi further opined that "Plaintiff had no acute or significant neurological findings that would require the medical staff to obtain STAT imaging or acutely transfer the [Plaintiff] to the emergency department."  (Id. at 4.)

Additionally, Dr. Kureshi opined that "[a]s result of the treatments rendered and appropriateness of the treatments rendered, Plaintiff has gone on to make a full recovery with no neurological deficits and no sequelae associated with any delay in care," and his

"complaints of low back pain are secondary to the severe discitis and osteomyelitis which was adequately and completely treated with IV antibiotics and open surgical debridement."  (Id.)  Dr. Kureshi also stated that "Plaintiff's ongoing complaints of low back pain are independent of timing associated with imaging, IV antibiotic treatment and/or surgical debridement," there is no evidence of residual injuries, and therefore "no further treatment is indicated or necessary."  (Id.)

### 3. Findings and recommendation

Defendants do not contest that the objective requirement of Plaintiff's deliberate indifference to serious medical needs claim is satisfied, and the Court agrees.  (ECF No. 39 at 14 (stating that "Defendants do not dispute Plaintiff suffered an objectively serious injury")); see also Colwell, 763 F.3d at 1066 (noting that the "existence of chronic and substantial pain" is a serious medical need); Hernandez v. Williams, Case No.: 21-cv-944-WQH-DDL, 2023 WL 4568773, at *6 (S.D. Cal. July 17, 2023) (finding that plaintiff's lower back pain was a serious medical need).

Turning to the subjective requirement of the deliberate indifference claim, which requires a showing that Defendants' response to Plaintiff's serious medical needs was deliberately indifferent, section 1983 violation requires an individualized examination of duties, responsibilities, and causation.  See Leer, 844 F.2d at 633 ("The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation.").  The Court therefore will address each Defendant's conduct individually.

### a. Defendant Dr. Williams

#### i. Relevant medical records

The undisputed medical records show that on January 12, 2021, Dr. Williams examined Plaintiff.  (See Gilmor Decl. at 2; id., Ex. A at 8–9; see also Williams Decl. at 2; Kureshi Decl. at 2; Pl.'s Dep. at 65–66; ECF No. 1 at 5.)  Plaintiff's "Chief Complaint" was lower back pain with numbness to his bottom right foot from a work injury.  (See Gilmor Decl. at 2; id., Ex. A at 8.)  Dr. Williams noted that the Toradol shot that Plaintiff

had received the day before decreased his pain from 10/10 to 5/10. (See id.; see also Williams Decl. at 2; Kureshi Decl. at 2.) Dr. Williams' physical examination of Plaintiff revealed "[m]ild tenderness of right side lower back" and limited range of motion due to stiffness. (See Gilmor Decl. at 2; id., Ex. A at 9; see also Williams Decl. at 2; Kureshi Decl. at.) He advised Plaintiff to continue taking pain medications consisting of Tylenol 650 mg, Motrin 400 mg, and Prednisone 40 mg. (See Gilmor Decl. at 2; id., Ex. A at 8–9; see also Williams Decl. at 2; Kureshi Decl. at 2; Pl.'s Dep. at 63, 65.)

On February 5, 2021, Dr. Williams examined Plaintiff for the second time. (See Gilmor Decl. at 2; id., Ex. A at 10–12; see also Williams Decl. at 2; Kureshi Decl. at 2; Pl.'s Dep. at 67.) He noted that Plaintiff had been taking his prescribed medications as directed, but his pain was not improving. (See Gilmor Decl. at 2; id., Ex. A at 11.) Dr. Williams performed a physical examination and noted that Plaintiff's back was "[v]ery tender" near the spine. (See id.; see also Williams Decl. at 2; Kureshi Decl. at 2.) Dr. Williams gave Plaintiff a shot of Toradol 60 mg for pain and ordered an MRI of Plaintiff's "lumbar anatomy." (See Gilmor Decl. at 2; id., Ex. A at 1; see also Williams Decl. at 2; Kureshi Decl. at 2; ECF No. 1 at 6.) Due to Plaintiff's worsening condition, Dr. Williams elevated Plaintiff to a higher level of care and placed him in Calipatria's OHU. (See Williams Decl. at 2; Kureshi Decl. at 2; Pl.'s Dep. at 67; ECF No. 1 at 6.)

On February 18, 2021, Dr. Williams examined Plaintiff for the third time during the timeframe at issue in this action. (See Gilmor Decl. at 2; id., Ex. A at 17–18; see also Williams Decl. at 2; Kureshi Decl. at 3; Pl.'s Dep. at 69; ECF No. 1 at 8.) Dr. Williams conducted a physical examination of Plaintiff, and noted limited range of motion due to pain and stiffness, and "[t]enderness diffusely low back mostly on the right." (See Gilmor Decl. at 2; id., Ex. A at 17; see also Williams Decl. at 2; Kureshi Decl. at 3.) Dr. Williams noted Plaintiff's pain in the lower back area and stated that Plaintiff's MRI was "pending." (See Gilmor Decl. at 2; id., Ex. A at 17; see also Williams Decl. at 2–3;

22cv1431-RSH(LR)

Kureshi Decl. at 3.)  He also prescribed Salsalate[7] 1,000 mg and Capsaicin cream.[8]  (See Gilmor Decl. at 2; id., Ex. A at 17; see also Williams Decl. at 3; Kureshi Decl. at 3.)

### ii.  Analysis

Defendants provided evidence establishing that during three appointments with Plaintiff at issue in this case on January 12, February 5, and February 18, 2021, Dr. Williams examined Plaintiff, treated Plaintiff's pain with several pain medications, formulated follow-up care, and elevated Plaintiff to a higher level of care at Calipatria's OHU when Plaintiff's condition did not improve.  (See Robinson Decl. at 2–3.)  Further, when Plaintiff's condition did not improve after the first appointment, Dr. Williams ordered Plaintiff's MRI during his second appointment on February 5, 2021, and noted that Plaintiff's MRI was "pending" during the third appointment less than two weeks later on February 18, 2021.  (Id.)  The burden of proof therefore shifts to Plaintiff to provide evidence establishing a triable issue of fact with respect to Dr. Williams' liability.  See Celotex Corp., 477 U.S. at 323.

Plaintiff alleges that Dr. Williams was deliberately indifferent to his medical needs because he refused to characterize Plaintiff's condition as an "emergency," order an immediate MRI, or immediately send Plaintiff to the ER.  (See Pl.'s Dep. at 63–66, 69–70, 75; see also ECF No. 1 at 7–10.)  Even viewing all of the evidence in the light most favorable to Plaintiff, Plaintiff has not presented evidence creating a triable issue of fact as to whether Defendant Dr. Williams was deliberately indifferent to Plaintiff's serious medical needs.  There is no evidence in the record showing that Dr. Williams ignored or failed to respond to Plaintiff's medical needs, or delayed treatment.  Rather, the record shows that Dr. Williams consistently examined Plaintiff, considered Plaintiff's medical complaints, and responded to those complaints by prescribing, administering, or

---

[7]  Salsalate is a non-steroidal anti-inflammatory medication used to treat pain.  (Id.)

[8]  Capsaicin cream is a pain relieving medication applied topically.  (Id.)

22cv1431-RSH(LR)

continuing pain medications.  See Toguchi, 391 F.3d at 1061 (affirming summary judgment where defendant "was consistently responsive to [plaintiff's] medical needs"). As such, Defendant Dr. Williams was actively working to address and improve Plaintiff's medical condition, and Plaintiff's disagreement with Dr. Williams' course of treatment does not support a finding of deliberate indifference.  See Sanchez, 891 F.2d at 242; Broughton v. Cutter Labs., 622 F.2d 458, 460 (9th Cir. 1980) (quoting Estelle, 429 U.S. at 105–06) ("[T]he indifference to [the prisoner's] medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action.").

Further, to the extent Plaintiff suggests that Defendant Dr. Williams was deliberately indifferent because he did not immediately order Plaintiff's MRI, Plaintiff must provide evidence that the purported delay in obtaining an MRI lead to "further significant injury."  Jett v. Penner, 439 F.3d 1091, 1096 (9th Cir. 2006) (citation omitted); see also Edwards, 615 F. App'x at 457; Shapley, 766 F.2d at 407.  The record in this case shows that Defendant Dr. Williams noted during his first appointment with Plaintiff on January 12, 2021, that Plaintiff's condition was improving after the Toradol injection Plaintiff had received the day before.  (See Gilmor Decl. at 2; id., Ex. A at 8–9; see also Williams Decl. at 2; Kureshi Decl. at 2 (containing Dr. Williams' progress notes dated January 12, 2021, stating that that the Toradol shot Plaintiff had received the day before decreased Plaintiff's pain from 10/10 to 5/10, and that Plaintiff was "[g]radually improving").)  Additionally, there is no evidence that there was a significant delay in providing Plaintiff with an MRI, or that an earlier MRI might have prevented the need for Plaintiff's surgery.  (See Kureshi Decl. at 4 (containing medical expert's opinion that "Plaintiff had no acute or significant neurological findings that would require the medical staff to obtain STAT imaging or acutely transfer the examinee to the emergency department."); see also Gilmor Decl. at 2; id., Ex. A at 42–44 (containing appointment notes from Pioneers' physician, Dr. Manix, dated February 21, 2021 (three days after Dr. Williams' last appointment with Plaintiff on February 18, 2021), that Plaintiff was

"[n]onsurgical at this point as he does not have neurologic deficit, but should he progress to have neurologic deficit[,] or abscess[,] or infection does not get better with antibiotic treatment as prescribed . . . then at that point he is a surgical candidate.").)

Notably, there is no evidence in the record that Dr. Williams' "chosen course of treatment was medically unacceptable under the circumstances." See Toguchi, 391 F.3d at 1058. Defendants' medical expert, Dr. Kureshi, opined that at each of the three examinations at issue in this case Dr. Williams appropriately treated Plaintiff's pain by "administering and prescribing various pain medications including but not limited to Tylenol, Tylenol with codeine, Toradol shots, [S]alsalate, and [P]rednisone." (Id. at 4.) Dr. Kureshi also concluded that "Dr. Williams's treatments of Plaintiff complied with or exceeded the appropriate standard of care" during the relevant timeframe. (Kureshi Decl. at 3 (emphasis added).)

Based on the record before it, the Court finds that there is no evidence from which a reasonable jury could conclude that Dr. Williams' response to Plaintiff's serious medical need was "deliberately indifferent." (See id.); see also Estelle, 429 U.S. at 107 ("[T]he question whether . . . additional diagnostic techniques or forms of treatment is indicated is a classic example of a matter for medical judgment."); Valdez v. Zhang, Case No.: 20-CV-736 JLS (WVG), 2023 WL 2657626, at *7 (S.D. Cal. Mar. 18, 2023) (concluding that plaintiff's failure to "offer any evidence whatsoever that [his doctor's] clinical assessments and recommendations deviated from prevailing standards of care" defeated any finding of deliberate indifference to an "excessive risk to [p]laintiff's health."); Carson, 2019 WL 1572969, at *1, 13, 15 (finding that defendant was not deliberately indifferent to plaintiff's serious medical needs by denying plaintiff's request for an MRI; noting that "[p]laintiff's disagreement with the type and timing of care d[id] not create a triable issue of fact," and "[t]o the extent the care was different than what [p]laintiff wanted or less than ideal, such care does not support a finding of deliberate indifference"). Accordingly, the subjective requirement of a deliberate indifference to

22cv1431-RSH(LR)

serious medical needs claim is not met.  See Farmer, 511 U.S. at 834; Wilhelm, 680 F.3d at 1122; Jett, 439 F.3d at 1096.

The Court therefore finds that Defendants' moving papers do not reveal a genuine issue of fact for trial, and that the "record taken as a whole could not lead a rational trier of fact to find for [Plaintiff]."  Matsushita Elec. Indus. Co., 475 U.S. at 587.  The Court thus **RECOMMENDS GRANTING** Defendants' Motion for Summary Judgment as to Defendant Dr. Williams.

### b.  Defendant P.A. Robinson

#### i.  Relevant medical records

The undisputed medical records establish that P.A. Robinson examined Plaintiff on February 16, 2021, and February 23, 2021.  (See Gilmor Decl. at 2; id., Ex. A at 13–16, 19–22; see also Williams Decl. at 2; Pl.'s Dep. at 68, 72, 74.)  On February 16, 2021, P.A. Robinson examined Plaintiff for back pain.  (See Gilmor Decl. at 2; id., Ex. A at 13–16; see also Williams Decl. at 2; Kureshi Decl. at 3; ECF No. 1 at 7.)  He noted that Plaintiff was in "mild distress" with 7/10 pain level, and his physical examination of Plaintiff revealed low back pain with palpation, and "decreased range of motion with flexion and extension."  (See Gilmor Decl. at 2; id., Ex. A at 14–15; see also Williams Decl. at 2; Kureshi Decl. at 3.)  P.A. Robinson stated that Plaintiff's "MRI ha[d] already been ordered," and that he administered Toradol 60 mg shot and prescribed Prednisone 5 mg.  (See Gilmor Decl. at 2; id., Ex. A at 15; see also Williams Decl. at 2; Kureshi Decl. at 3; Pl.'s Dep. at 68, 76.)  P.A. Robinson further noted that he advised Plaintiff to "hold off on any strenuous activity," use temporary cane for mobility, and "consider TPI [trigger point injection[9]] in the future if symptoms continue or become progressively worse."  (See Gilmor Decl. at 2; id., Ex. A at 15; see also Pl.'s Dep. at 68.)

---

[9]  A trigger point injection treats muscle pain by injecting a small amount of anesthetic.  (Id.)

On February 23, 2021, P.A. Robinson examined Plaintiff for the second and final time during the timeframe at issue in this case.  (See Gilmor Decl. at 2; id., Ex. A at 19–22; see also Williams Decl. at 2.)  He noted the results of Plaintiff's February 19, 2021 MRI, and stated that Plaintiff was taking two antibiotic medications to treat his interspinal abscess—Vancomycin and Ceftriaxone.  (See Gilmor Decl. at 2; id., Ex. A at 20; see also Williams Decl. at 2; Kureshi Decl. at 3.)  P.A. Robinson's physical examination of Plaintiff revealed lower lumbar pain with mild palpation and decreased range of motion.  (Id.)  P.A. Robinson continued Plaintiff's antibiotic prescriptions, noted that Plaintiff was to have a repeat MRI after the completion of his antibiotic regiment, and prescribed Tylenol with Codeine ("Tylenol No. 3") to treat Plaintiff's pain.  (See Gilmor Decl. at 2; id., Ex. A at 21; see also Williams Decl. at 2; Kureshi Decl. at 3; Pl.'s Dep. at 72.)

### ii.  Analysis

As summarized above, Defendants provided evidence establishing that during P.A. Robinson's two appointments with Plaintiff on February 16, and February 23, 2021, he conducted physical examinations, administered Toradol 60 mg shot during the first appointment, prescribed or continued prescriptions of pain medications to treat Plaintiff's back pain during both appointments, continued antibiotic regiment prescribed by physicians from Pioneers to treat Plaintiff's interspinal abscess during the second appointment, and formulated follow-up care if Plaintiff's condition did not improve.  (See Robinson Decl. at 2–3.)  Defendant P.A. Robinson also noted during the first appointment that Plaintiff's MRI had already been ordered, and noted during the second appointment that Plaintiff was to have a repeat MRI after the completion of his antibiotic regimen.  (Id. at 2.)  Where the non-moving party bears the burden of proof at trial, the moving party need only prove that there is an absence of evidence to support the non-moving party's case," In re Oracle Corp. Sec. Litig., 627 F.3d at 387 (citing Celotex Corp., 477 U.S. at 325), and the burden shifts to the opposing party to provide admissible

evidence beyond the pleadings to show that summary judgment is not appropriate, Celotex Corp., 477 U.S. at 322–24.

In this case, Plaintiff alleges that P.A. Robinson was deliberately indifferent to his medical needs because he refused to characterize Plaintiff's condition as an "emergency," order an immediate MRI, or immediately send Plaintiff to the ER.  (See Pl.'s Dep. at 68, 72, 75–76; see also ECF No. 1 at 7–10.)  Even viewing all of the evidence in the light most favorable to Plaintiff, Plaintiff has not presented evidence creating a triable issue of fact as to whether Defendant P.A. Robinson was deliberately indifferent to Plaintiff's serious medical needs.  There is no evidence in the record showing that Defendant P.A. Robinson ignored or did not respond to Plaintiff's medical needs, or delayed treatment. Rather, the evidence shows that P.A. Robinson examined Plaintiff, consistently treated Plaintiff's pain with numerous pain medications, and treated Plaintiff's spinal infection by continuing Plaintiff's prescribed antibiotic regimen.  P.A. Robinson's decision not to expedite Plaintiff's already-pending MRI does not establish deliberate indifference.  See Estelle, 429 U.S. at 107 ("A medical decision not to order an X-ray, or like measures, does not represent cruel and unusual punishment.").  At most, the evidence shows a difference in opinion between Plaintiff and Defendant P.A. Robinson regarding the course and timing of treatment.  A difference of opinion between a prisoner-patient and prison medical personnel regarding medical treatment does not support a finding of deliberate indifference.  See Colwell, 763 F.3d at 1068; Broughton, 622 F.2d at 460; Carson, 2019 WL 1572969, at *1, 13, 15.

Further, there is no evidence before the Court that P.A. Robinson's "chosen course of treatment was medically unacceptable under the circumstances."  See Toguchi, 391 F.3d at 1058; see also Roberts v. Hensley, Case No.: 15cv1871-LAB (BLM), 2017 WL 6453477, at *17 (S.D. Cal. Dec. 15, 2017) (finding that defendant was not deliberately indifferent to plaintiff's serious medical needs, where defendant examined plaintiff and determined that immediate [treatment] was not necessary; noting that "[t]here [was] no evidence that this decision was medically unacceptable or chosen with a conscious

22cv1431-RSH(LR)

disregard for [p]laintiff's [medical] needs"). To the contrary, the evidence shows that that during the two appointments at issue, P.A. Robinson "appropriately treated Plaintiff's pain by administering and prescribing various pain medications," and that "Plaintiff had no acute or significant neurological findings that would require the medical staff to obtain STAT imaging or acutely transfer [Plaintiff] to the emergency department." (See Kureshi Decl. at 3–4.) Notably, Defendants' medical expert, Dr. Kureshi, opined that "P.A. Robinson's treatments of Plaintiff were at or exceeded the standard of care." (Id. at 3 (emphasis added).)

Based on the record before it, the Court finds that there is no evidence from which a reasonable jury could conclude that Defendant P.A. Robinson's response to Plaintiff's serious medical need was "deliberately indifferent." Therefore, the subjective requirement of a deliberate indifference to serious medical needs claim is not met. See Farmer, 511 U.S. at 834; Wilhelm, 680 F.3d at 1122; Jett, 439 F.3d at 1096.

For these reasons, the Court finds that Defendants' moving papers do not reveal a genuine issue of fact for trial, and that the "record taken as a whole could not lead a rational trier of fact to find for [Plaintiff]." Matsushita Elec. Indus. Co., 475 U.S. at 587. Accordingly, the Court **RECOMMENDS GRANTING** Defendants' Motion for Summary Judgment as to Defendant P.A. Robinson.

## B.    **Qualified Immunity**

Defendants P.A. Robinson and Dr. Williams argue that they are entitled to qualified immunity from suit for damages. (ECF No. 39 at 21–22.) They assert that they did not violate Plaintiff's clearly established constitutional rights because there is no case or policy requiring medical professionals to order an emergency MRI or send Plaintiff to an emergency room because of pain. (Id. at 22.) Defendants further contend that it would not have been clear to a reasonable medical care provider that Plaintiff had a spinal infection. (Id.) As noted above, Plaintiff has not opposed Defendants' motion. (See Docket.)

22cv1431-RSH(LR)

1     Government officials sued under 42 U.S.C. § 1983 may be immune from civil

2  liability under the doctrine of qualified immunity.  Government officials are entitled to

3  qualified immunity unless "(1) they violated a federal statutory or constitutional right,

4  and (2) the unlawfulness of their conduct was 'clearly established at the time.'"  Dist. of

5  Columbia v. Wesby, 583 U.S. 48, 62–63 (2018) (quoting Reichle v. Howards, 566 U.S.

6  658, 664 (2012)).  A right is "clearly established" when it is "sufficiently clear that every

7  reasonable official would have understood that what he is doing violates that right."

8  Rosenbaum v. City of San Jose, 107 F.4th 919, 924 (9th Cir. 2024) (quoting Rivas-

9  Villegas v. Cortesluna, 595 U.S. 1, 5 (2021)); see also Kennedy v. City of Ridgefield, 439

10  F.3d 1055, 1065 (9th Cir. 2006) (internal quotation marks omitted) (stating that to

11  determine whether a right is "clearly established," the reviewing court needs to determine

12  whether "the preexisting law provided the defendants with fair warning that their conduct

13  was unlawful").

14     "The principles of qualified immunity shield an officer from personal liability

15  when an officer reasonably believes that his or her conduct complies with the law."

16  Pearson v. Callahan, 555 U.S. 223, 244 (2009).  Qualified immunity protects "all but the

17  plainly incompetent or those who knowingly violate the law."  Wesby, 583 U.S. at 62–63

18  (quoting Malley v. Briggs, 475 U.S. 335, 341 (1986)).

19     In this case, the Court found that no genuine dispute exists with respect to whether

20  Defendants Dr. Williams and P.A. Robinson violated Plaintiff's Eighth Amendment

21  rights.  The Court therefore does not need to address Defendants' alternative request for

22  judgment as to qualified immunity.  See Cnty. of Sacramento v. Lewis, 523 U.S. 833, 841

23  n.5 (1998) ("[The better approach to resolving cases in which the defense of qualified

24  immunity is raised is to determine first whether the plaintiff has alleged the deprivation of

25  a constitutional right at all.");  Edwards v. Pollard, Case No.: 2:21-cv-01157-JES-WVG,

26  2023 WL 6149898, at *8 n.2 (S.D. Cal. Sept. 20, 2023) ("Because the Court finds

27  Defendants are entitled to judgment as a matter of law on the merits of Plaintiff's Eighth

28  Amendment claim, the Court need not address Defendants' alternative argument that they

are entitled to qualified immunity."); <u>Jones v. Pollard</u>, Case No.: 21CV162-GPC(BGS), 2023 WL 4728802, at *8 (S.D. Cal. July 24, 2023) (same); <u>Hernandez</u>, 2023 WL 4568773, at *8 (same); <u>Griffin v. Shakiba</u>, Case No. 21-cv-1474-MMA (DEB), 2023 WL 2939350, at *10 (S.D. Cal. Apr. 13, 2023) (declining to reach the issue of qualified immunity where the court recommended summary judgment in favor of defendants as to plaintiff's Eighth Amendment claims); <u>Nava</u>, 2018 WL 3773848, at *19 (stating that the court did not need to address the issue of qualified immunity because the court recommended summary judgment in favor of defendants on the ground that plaintiff did not establish a genuine issue of material fact as to whether defendants were deliberately indifferent to plaintiff's serious medical need).

## IV.  CONCLUSION AND RECOMMENDATION

For all of the foregoing reasons, **IT IS HEREBY RECOMMENDED** that the District Judge issue an Order: (1) approving and adopting this Report and Recommendation; and (2) **GRANTING** Defendants' Motion for Summary Judgment.

**IT IS HEREBY ORDERED** that any written objections to this Report must be filed with the Court and served on all parties **no later than <u>February 21, 2025</u>**.  The document should be captioned "Objections to Report and Recommendation."

/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /
/ / /

22cv1431-RSH(LR)

**IT IS FURTHER ORDERED** that any reply to the objections shall be filed with the Court and served on all parties **no later than <u>February 28, 2025</u>**.  The parties are advised that failure to file objections within the specified time may waive the right to raise those objections on appeal of the Court's order.  <u>See</u> <u>Turner v. Duncan</u>, 158 F.3d 449, 455 (9th Cir. 1998).

**IT IS SO ORDERED.**

Dated:  January 29, 2025

_____

Honorable Lupe Rodriguez, Jr.
United States Magistrate Judge

22cv1431-RSH(LR)